Your Honor, may it please the Court, at issue before you today upon review are the Administrative Law Judges' findings. Ms. Lellhame, in her opening brief, has set forth four basic arguments. We submit, Your Honors, without conceding the first two issues, namely the physical residual functional capacity finding. The last two issues in and of themselves provide bases for the Court to grant relief. Specifically, the Administrative Law Judge erred in her finding when she concluded that Ms. Lellhame had a marginal education, as that term is defined under the regulation. That finding was in error for two main reasons. Number one, the finding was premised on a sixth-grade education in Assyrian, not in English. The relevant regulation provides that one's educational level and their ability to read, write, and communicate is based on English, not on a foreign language. Secondly, the Administrative Law Judge erred in her finding in this regard based on the claimant's testimony that she could read street signs. Street signs can mean a multitude of things. It can mean the name of a street. It can mean understanding a railroad crossing. It can mean knowing what a speed limit means. The case that's cited on page 29 of Appellant's opening brief provides a factual basis where another court stated that the mere ability to understand signs or a few words should not be equated with the ability to read, write, and understand English. Well, normally we would give a great deal of deference to the factual findings in this case. Is it your contention that we're reviewing this because they are so clearly erroneous that they ought to be reversed, or are you urging that there is an error of law in the way that the ALJ applied the law to the facts? Both, Your Honor. Number one, her findings in the factual sense were erroneous and are not supported by substantial evidence. As a result of those factual findings, it led to a flawed finding in law because she applied the wrong law, as a result of which the claimant was found not disabled. If she had made the proper findings of fact, different law would have applied and conceivably a different result would have occurred. But the linchpin of that, of your argument on this issue then, before we reach even a question of the application of law, is that we have to conclude that those findings were simply erroneous. That's correct, Your Honor. Because the administrative law judge erred in her finding on education, she then posed hypothetical questions, having determined that Ms. Lailholm could not return to her past relevant work. The hypothetical question that she posed to the vocational expert was based on a marginal education, not on the fact that she was illiterate. Based on the assumption that her education was marginal rather than illiterate, the vocational expert responded that the claimant could perform the alternate job of hand packager. Well, counsel, if we accepted your argument, does this not go only to the question of the administrative law judge's finding of not disabled? I'm sorry, Your Honor? If we accept your premise that the wrong standard was applied or wrong factual finding was reached, does it reach any of the issues or conclusions of the administrative law judge other than that the appellant in this matter was not disabled? The Court would have – if I understand your question, Your Honor, the Court would have several options. Number one, the Court can conclude that the case would have to go back for clarification, given the fact the administrative law judge made improper findings. The other option would be that the Court could conceivably say, given the fact that she is indeed illiterate by virtue of not being able to read, write and communicate in English, the commissioner has not and cannot meet her burden, a proof at step 5, and therefore, as a matter of law right now, she should be found disabled. Well, let me – let me sharpen my question. Is it your position that the finding on literacy would affect the medium work finding or conclusion? It would affect, Your Honor – thank you for clarifying the question. It would affect her ability to do the job that was cited by the vocational expert. The vocational expert cited one medium job, and that was hand packager. Under this Court's decision in Johnson and the commissioner's ruling that's applicable to these scenarios, 004P, the vocational expert has to respond to questions from the administrative law judge why there's a discrepancy between the response he's given or she's given and the DOT. In this instance, this job requires basic literacy. You cannot do the job cited by the vocational expert if one's illiterate. So there might have been other medium jobs conceivably that one might be able to do if they're illiterate. The fact of the matter is that testimony was never offered, and therefore, we're left to speculate if, in fact, there were – there would be alternate medium jobs. I would suggest then there's only one option for us, which is to remand for clarification. If you're saying that had a properly framed hypothetical been given, then there could be potentially testimony from the vocational expert that there are jobs she could have performed. Potentially or not, Your Honor. That's correct. Okay. I'm going to reserve the balance of my time, Your Honors. Thank you. Very well. I hear from the Commissioner. Good morning, Your Honors. I'm Dennis Hanna, representing the Commissioner of Social Security, and with me today is Donna Montano, another Assistant Regional Counsel with the agency. As far as Mrs. Lelheim's illiteracy, I think something that is not being pointed out here is that she worked for 23 years in a cannery in spite of this illiteracy. And that was – the vocational expert, when he responded to the ALJ's hypothetical question, was aware of that, and that plays into whether or not she would be able to do the job of hand packager that the vocational expert identified. Well, is the cannery the epitome of all hand packaging jobs? No, but just the fact that she could have worked for 23 years in a job, and she left that job not because of a disability, not because of a mental or physical impairment or her illiteracy. She was laid off, and that's clearly what indicated in the record. I understand that. But the question is, given the combination of factors and then the hypothetical, there's no aversion to the English capability one way or the other. What you're saying is that the vocational expert had that in mind, but it wasn't articulated, and the ALJ didn't explain it. Correct. So why should we speculate as to what the answer would have been if the in the realm of hand packaging jobs generally, not just a cannery where she happened to be working and may have learned it by rote for all we know, why shouldn't we remand it at least for clarification on that basis? In the Dictionary of Occupational Title, all jobs require this level one literacy, which requires 2,500 words, recognition of 2,500 words. So the job in the cannery would have required that as well. I don't know that. I mean, the dictionary is a generalization, but the fact that she had a job where we don't know the nature of what she did and how she did it other than she worked in a cannery doesn't substitute for evidence on the record that she actually qualified for the Dictionary of Titles criteria. I mean, that's the problem. You may be right, but I don't feel comfortable imposing on the ALJ's judgment or the VE's testimony a speculative explanation when that's really the job of the ALJ to tell us or explain, don't you think? True. At most, this is harmless error that the ALJ did not clarify this with the vocational expert. I think that if it was remanded for this clarification, it's clear what would happen, that a VE would say she worked for 23 years in this job. She can certainly do this job of hand packager. Well, but then her counsel would have opportunity to explain why that isn't legitimate. True. Somebody trained her from day one and said, this is all you do, and she didn't have to read anything. It was all orally transmitted to her. But that kind of job isn't existent anymore. She got laid off from it. Correct. Okay. Also on this issue of illiteracy, counsel cites to the case he mentioned on page 29 in his opening brief, the Yassin v. Heckler case is an unpublished 19-year-old decision from the District of Illinois. And his citation to this case is confusing and misleading. It's confusing because it's unclear it's actually a quotation from the case. It could be – it looks like it could be a quotation from the transcript of this Yassin case is how his quotation starts out. And it's – the facts are somewhat similar to this case, so there's testimony about Mr. Yassin's ability to speak English. There's also portions missing from this quotation with no indication that there's anything missing. But then it's grossly misleading because Mr. Sackett changed the claimant to a woman in this quote. It's Mr. Yassin. It's Mahmoud Yassin. And there's nine occurrences in the quoted paragraph where he changed to she, him to her, himself to herself. And this makes the reader question – at first I thought, well, he's talking about the Lelhaim case here. Because the quotation runs the whole page, you don't realize that it's actually indented in its quotation. It could be analysis pertaining to Lelhaim and not the Yassin case. Even if it had been quoted correctly, this is not that supportive of the Lelhaim case because, substantively, the Yassin case was a step forward decision where the ALJ had found that Mr. Yassin could perform his previous work. And the district court judge in that case remanded it so that a vocational expert could testify about his – because of his illiteracy, lack of English  And we have that here in this case. The vocational expert has already answered this question. The ALJ included in her hypothetical question no ability to read English and very limited ability to understand English. And that's precisely what the district court judge wanted to happen in the Yassin case. Well, counsel, isn't a problem for you that what was apparently under your own regulations, SSR 00-4P, the administrative law judge was required to explain that discrepancy between, in this instance, the education and the job classification and the records devoid of that explanation? Yes. That is obviously missing. And that is a problem. But as I said, it's harmless error. And I really think that this case And it's harmless error in your view because if we send it back, the administrative law judge will reach the same conclusion? Exactly. And you'd ask us to either accept that on your representation or speculate about it. There's also, as long as counsel has cited out-of-circuit cases, an excellent Seventh Circuit decision that deals with precisely the same issue. And the claimant in that case also had 23 years' experience in a job and was claiming illiteracy. And Judge Easterbrook wrote a great decision. It's the Donahue case. And it's just three years old, not 19 years old. Is it great because it's high-quality language or he just ruled for you guys? No. It was good because he examined the fact that this person had worked for 23 years in a job. He explained, and it's very obvious, that illiteracy is not a progressive disease. If he was able to work in this job for 23 years, he didn't become more illiterate and lose his ability to speak English. He hopefully gained ability to speak English in that time. Counsel, before your time expires, can you also address the fact that the administrative law judge appears to have applied the wrong standard for determination of non-severe depression? Sure. Although Mr. Sackett said that he was waiving that issue at this point. But the only evidence of depression was from the examining psychologist's report, where he found that she had mild depression. And there's one comment in there that Mr. Sackett has keyed in on in his brief. But the totality of the record shows no problem. She never alleged depression until the reconsideration level. And also, the hypothetical question to the vocational expert, the ALJ's hypothetical question, included some mental limitations, even though the ALJ didn't find any mental limitations in her RFC finding, she did include some limitations in the hypothetical question about fair abilities to relate to co-workers and the general public. I want to make sure I understand the government's position, then. The fact that there are those statements made in the hypothetical, in your mind, satisfies the requirement that the ALJ make specific findings regarding a rating of depression? Yes. I think she gave Mrs. Lelheim the benefit of the doubt when she posed that vocational – that hypothetical question to the vocational expert. Anything to add? I'd just like to ask the Court to affirm the district court's decision, because I think that the ALJ's decision is supported by substantial evidence. Thank you. Counsel. Rebuttal. Thank you, Your Honor. Two points, if I might. Number one, it doesn't matter if Ms. Lelheim worked in the cannery for 23 years or 230 years. The administrative law judge took no testimony whatsoever as to how she went about doing that job. The fact of the matter is, she could have had an Assyrian-speaking, supervisor and Assyrian-speaking colleagues. We don't know how she did that job. And to say that because she did that job for 23 years means, if so, the fact that she can do a different job is rank speculation. Point number two, opposing counsel, and this speaks – I did not waive, and I want to make that very clear to the panel, the argument regarding non-severity. I merely stated to the panel that, assuming arguendo, that plaintiff does not prevail on those issues, and that is an assumption, she can still prevail and gain relief based on the other issues waived. I gathered that. I took your comment to mean you were focusing your remarks today on one issue and submitting the rest on the briefs. Is that accurate? That's correct, Your Honor. Okay. Thank you very much. Thank you. The case just heard will be submitted. Thank you both for your arguments. The case of McNeil v. Verisign is submitted on the briefs. We'll proceed with argument on Tucker v. Baxter. Thank you.
judges: Thomas, Fisher, Robart